Jane WILLIAMS, Plaintiff,

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, Defendant.**

No. 79–CV–757.

United States District Court, N.D. New York.

April 27, 1981.

On Renewed Motion for Summary Judgment Oct. 5, 1981.

**448**

Brownstein & Williams, Albany, N.Y., for plaintiff; Jerome D. Brownstein, Albany, N.Y., of counsel.

Robinson, Williams, Angeloff & Frank, Rochester, N.Y., for defendant; Martha W. Arthur, Rochester, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

The plaintiff's claims are founded on the statutory assurances of Title VII of the Consumer Credit Protection Act, 15 U.S.C. § 1691(a)(1). This statute as amended in 1976 includes protections against discrimination on the basis of race, color, religion, national origin, and age in creditor-lender transactions. The defendant First Federal Savings and Loan Association (First Federal), has moved for summary judgment, and in the alternative has moved to strike the note of issue, on the grounds that there are no genuine issues as to any material facts. They further claim that this Court should grant summary judgment as a matter of law.

The plaintiff, Jane Williams, was involved in plans to purchase real estate, which she hoped to partially finance through a mortgage with First Federal. Her deadline to secure adequate funding was September 21, 1979. She apprised First Federal of this fact when she made her initial mortgage application with them on September 18, 1979.

The completed mortgage application reveals that Ms. Williams was already carrying mortgage liability with West End Savings and Loan Association. This prior liability, together with information relating to only Ms. Williams' personal income, led First Federal to the conclusion that any further indebtedness would be unacceptable.

Although Ms. Williams had provided First Federal with personal income infor-

mation, she had not submitted her partnership income information as per First Federal's policy. This additional information was sought by the bank pursuant to their ordinary procedures of garnering data from self-employed individuals.

First Federal's Assistant Vice President, Richard Wooster, informed Ms. Williams of the resulting adverse determination by letter dated September 20, 1979. He further explained that Ms. Williams might yet successfully pursue her request if she would comply with the bank's requirements and submit partnership information.

The plaintiff never proceeded any further in seeking a mortgage with First Federal. She did request and obtain a mortgage from Union National Bank dated October 23, 1979. Ms. Williams asserts that this second application was supported by the same information that had been provided to First Federal. Therefore, Ms. Williams asserts that the denial was discriminatory, and was entirely based on her sex and marital status.

### I.

The Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.* is relatively recent, hence courts have not had extensive opportunity to review and interpret its strictures. However, the legislative history is very clear that the protections afforded by the ECOA should be applied in the same manner as those created by Title VII Equal Employment Opportunity Commission (EEOC) provisions. The Senate Report reveals that:

> The prohibitions against discrimination on the basis of race, color, religion or national origin are unqualified. In the Committee's view, these characteristics are totally unrelated to creditworthiness and cannot be considered by any creditor. In determining the existence of discrimination on these grounds, as well as on the other grounds discussed below, courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual transactions. Thus judicial constructions of anti-discrimination legislation in the employment field, in cases such as *Griggs*

*v. Duke Power Company,* 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971) (footnote omitted), and *Albemarle Paper Company v. Moody* [422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280] (U.S. Supreme Court, June 25, 1975), are intended to serve as guides in the application of this Act, especially with respect to the allocations of burdens of proof.

S.Rep. No. 94–589, 94th Cong. 2nd Sess., reprinted in [1976] U.S.Code Cong. & Ad. News 403, 406.

■ Plaintiff may then establish her case on either a disproportionate impact theory under *Griggs,* or a disparate treatment analysis under the widely held test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Here the plaintiff may not rely upon any statistical disparity between the protected class in the applicant pool, and the group actually accepted from the pool, *Cherry v. Amoco Oil Co.,* 490 F.Supp. 1026, 1030 (N.D.Ga.1980). First Federal has disclosed the data to illustrate that although the total number of women applicants comprises only 4 percent of their mortgage applications, 63 percent of the females' applications are accepted. Clearly Ms. Williams has not been subjected to a disproportionate impact under the *Griggs* "effects test."

■ As the plaintiff argues, her claims must then be supported by the disparate treatment theory particularized by *McDonnell.* That opinion states:

> The complainant in a Title VII trial must carry the initial burden ... of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications [footnote omitted].

Yet submission of proof on these four elements gives rise to only a rebuttable presumption of discriminatory intent, *Lieberman v. Gant,* 630 F.2d 60, 65 (2d Cir.1980).

The defendant need only produce a basis other than discriminatory intent to rebut that presumption. The burden then falls again on the plaintiff to show pretextual discrimination.

## II.

The plaintiff has fulfilled her obligation to bring forward allegations under the *McDonnell* test, yet there remains some question as to the viability of a portion of those assertions.

■ The plaintiff voluntarily submitted information about her sex and marital status, yet mere identification with a minority element does not warrant a blanket assurance of a guaranteed loan by any lending institution. *See Griggs* at 431, 91 S.Ct. at 853; *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 188 (2d Cir.1978).

However, the plaintiff relies heavily upon the fact that a later application to Union National Bank was accepted, allegedly upon the strength of the identical information previously submitted to First Federal. Ms. Williams asserts that First Federal's denial was prejudiced only by her sex and marital status. However, the proposed mortgage agreement terms with First Federal differ from the mortgage loan terms actually negotiated between the plaintiff and Union National. Ms. Williams had requested a 20 year, $26,700.00 mortgage at 10 percent with First Federal, while the mortgage which was approved with Union National was a 20 year, $30,000.00 liability bearing an interest reflecting prime anywhere between 11 and 19 percent. Without computing the monetary difference in liability it appears that Ms. Williams' commitment to Union National Bank was a more attractive investment for the bank.

The plaintiff has unequivocally stated that the mere submission of the successfully negotiated mortgage agreement with Union National Bank provides the essential element of her *prima facie* case. In interpreting an extension of the *McDonnell* criteria to creditor-lender situations, the fourth element must translate into credit arrange-

ments displaying more than similar characteristics to earlier credit denials. Any deviation in circumstance from previous denials only supplies possible additional reasons to reflect factors other than those protected by the ECOA.

The parties support this motion with assertions that their information is complete, yet discovery proceeds in this case. On the strength of the information supporting this motion, the plaintiff has not met her burden, therefore the defendant's motion for summary judgment is denied without prejudice.

This Court recognizes that an improper construction on the facts surrounding the exact nature of that second mortgage agreement would provide an extended application of the *McDonnell* test which would be inaccurate and misleading. Recognizing the caution implicit within Rule 56, this Court emphasizes that the dearth of information surrounding the mortgage agreement with Union National represents the only questionable material fact, and the defendant is hereby granted 30 days from the date of this Order to renew their motion for summary judgment.

Defendant's alternative motion to strike the note of issue has been rendered moot by this Court's Order dated April 3, 1981, which denied defendant's application for an order prohibiting the plaintiff from filing any note of issue.

### ON RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant First Federal Savings and Loan Association of Rochester has renewed its motion for summary judgment, seeking a determination in its favor as a matter of law.

This Court rendered a Memorandum-Decision on the previous summary judgment motion, giving leave to renew, but requesting that the parties address the requisites of the test to establish disparate treatment under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this case the alleged violation of the Consumer Credit Protection Act, 15 U.S.C. § 1691(a)(1), occurred as a result of First Federal's denial of Ms. Williams' mortgage application. As a basis for discrimination, Ms. Williams attempts to rely on the fact that another lending institution did grant her a mortgage on the same property. Plaintiff advances the credit extension by Union National Bank as the complement of the *McDonnell* analysis.

### I.

Before reaching that analysis, this Court notes that the additional information brought forward by the parties on this motion has not exposed disputed material facts. Plaintiff admits that "there is now substantial agreement as to the facts." Any contentious comments added thereafter do not relate to material facts, rather they involve factual clarifications unrelated to plaintiff's *prima facie* case.

### II.

As this Court noted in the April 27, 1981 Decision, creditor-lender transactions do not conveniently fit the scenario adopted in *McDonnell* to evaluate employment discrimination cases. The difficulty is specifically related to the comparison between credit withheld, and credit extended. Ms. Williams attempts to enter the latter credit arrangement with Union National to support her allegation that First Federal's denial was based wholly on her sex and marital status.

It is clear from the parties' affidavits, particularly Affidavit of Dirk Adams, that there were very real financial differences between the two loan applications. It is undisputed that Ms. Williams had contributed information to her loan application at Union National, that had not been forthcoming at her request for credit from First Federal. Furthermore, Ms. Williams has been unsuccessful in her attempts to refute the obvious monetary differences between the two requested loan obligations. To this extent, she has not met her burden of establishing a *prima facie* case of discrimination under § 1691(a)(1).

For this reason, defendant's motion is hereby granted.

IT IS SO ORDERED.