United States Court of Appeals,

Fifth Circuit.

No. 92-4681

Summary Calendar.

Larry W. MOORE and Naomi W. Moore, Plaintiffs,

Larry W. Moore, Plaintiff-Appellant,

v.

U.S. DEPARTMENT OF AGRICULTURE, on Behalf of FARMERS HOME ADMINISTRATION, Defendant-Appellee.

June 30, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before GARWOOD, JONES, and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Moore and his wife filed suit against the United States Department of Agriculture under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.,* alleging that they were denied the opportunity to participate in a sale of inventory farmland held by the Farmers Home Administration because they were "white." Incredibly, the letter sent them from the Farmers Home Administration on December 29, 1989, rejecting their application to participate in the sale, stated precisely that. Nevertheless, the district judge found their lawsuit "premature" and dismissed it for that reason. We reverse.

It is trite to say that over 130 years ago a Civil War was fought in this nation and beginning 40 years ago a legal war was re-fought to stop racial discrimination. Yet in 1989, the Moores received a letter from FMHA rejecting their loan application for the following "specific reason[s]":

You have failed to provide proof that you meet the criteria of SDA. (No Whites).

This statement apparently reflected the policy of the Agriculture Department in implementing the Socially Disadvantaged Farm Ownership Outreach program, established pursuant to the Agricultural

Credit Act of 1987, 7 U.S.C. § 2003.[1]  Because of the overt racial discrimination, the Moores' allegations pose more than a possibility of recovery under a *Bivens*-type action founded in the equal protection component of the Fifth Amendment.  *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).  What other remedies might be available to appellants we need not speculate at this time.

The government's brief fails to defend its agents' conduct.  But there is no *mea culpa.*  The government high-handedly supports dismissal on the basis of lack of justiciability, characterized as lack of standing or ripeness.  The Moores, it contends, never filled out a complete loan application, hence they could never have qualified for the FMHA program.  Perhaps, in the end, this would have been true.  But how does the government know this?  And who can fault the Moores if they were cowed, following their rejection based solely on skin color, into forgetting some of the procedural details as they groveled before FMHA in order to make their record for later administrative proceedings or a lawsuit?[2]  The case should never have been dismissed on this basis.

---

[1]While the federal government's ability to promote such programs is broader than that of state and local governments, *see Metro Broadcasting v. FCC,* 497 U.S. 547, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990), the Supreme Court made clear in *Metro Broadcasting* that such programs were constitutional only if they were substantially related to an important government interest which did not place an undue burden on non-minorities.  One wonders what substantial relation to an important interest is satisfied in operating, if that is what happened, a government program for the sale of agricultural land with a racial criterion this crude.  Further, the burden on non-minorities seems to be a great deal more than undue.  We must leave to another day a ruling on the constitutionality of this program.

[2]The day after Moore's application was submitted, the FMHA sent him a letter saying that his application did not indicate "the minority you represent."  It went on to say that the program was directed towards "Blacks, Hispanics, American Indians, Alaskans, Asians/Pacific Islanders" and stated "if your race is of the above, please provide proof to this office."  In this connection it suggested a birth certificate (or help from "National and State offices for the race you represent").  It went on to say "we cannot be involved in making a loan to a non minority under this Socially Disadvantaged Program."  This initial letter did not suggest or request completion of the application in any respect except minority status, and it told the applicant that in any event he could not be considered if he was white.  Plainly then, it advised that there was no point in completing the application if the applicant were white, and, conversely, that the otherwise incomplete nature of the application was not a bar to its consideration if the applicant showed he was one of the listed minorities.  Understandably, then, the applicant, who was white, did not further complete the application before it was formally denied approximately two weeks later.  It was then denied not on the grounds of incompleteness, but merely because the applicant had failed to show that he was not white.  Still later, when Moore attempted an administrative appeal of this denial, and also an administrative complaint on the grounds of racial discrimination, these were denied solely on the ground that whites were not eligible.

It is no different from our court's holding in *Bentley v. Beck,* 625 F.2d 70 (5th Cir.1980), where a prisoner had been told he could not work in the jail kitchen until there was an opening for a "white boy." The district court dismissed the case on the county's urging that a prisoner has no constitutional right to be assigned any particular job. This court held:

> Both the court's order and appellee miss the point. As plaintiff states in his pro se brief, he is not claiming to have a constitutional right to a particular job. His claim is that his application for the position of kitchen orderly should not be denied solely because of his race, clearly unconstitutional conduct.... Inmates have a constitutional right to be free from racial discrimination.

625 F.2d at 70-71. Surely the Moores stand on the same constitutional footing as prison inmates. *See also, Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991); *Regents of University of California v. Bakke,* 438 U.S. 265, 281 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978) (lack of consideration is harm enough for standing); *Finch v. Mississippi State Medical Association,* 585 F.2d 765, 771-72 (5th Cir.1978). *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 1993 WL 196873, 1993 US LEXIS 4025 (June 14, 1993) (discussing and endorsing the *Bakke* standing rational).

We add to *Bentley*'s reasoning only the observation that granting a dismissal for lack of standing in this case has particularly pernicious ramifications. Where there are allegations of direct, overt racial discrimination, as were made here, a court should think long and hard before dismissing a case for lack of "justiciability." The badge of inequality and stigmatization conferred by racial discrimination is a cognizable harm in and of itself providing grounds for standing. *Flanagan v. Aaron E. Henry Community Center,* 876 F.2d 1231, 1236 (5th Cir.1989); *Woods-Drake v. Lundy,* 667 F.2d 1198, 1203 (5th Cir.1982); *Gore v. Turner,* 563 F.2d 159, 164 (5th Cir.1977).

Here the district judge found that an incomplete application would not have been approved even if the Moores were members of a minority. That is doubtless correct, *if* they had persisted in refusing to complete the application. But the suggestion of the initial letter to the Moores is that FMHA would have worked with them to complete the application if they had been minorities, and, conversely, that they might well not have completed it simply because they had been told, by that

same letter, that unless they were members of a minority group FMHA would not consider the application at all, whether or not they completed it.[3] There is no finding, nor any evidence, that the Moores, apart from being white, were not sufficiently qualified in other respects, or would not have been approved and granted the requested loan. Indeed at the time the application was finally turned down, there were no competing applicants for this property. At the least, further factual development is required to find out what effect the discrimination actually had.

For the foregoing reasons, the judgment is **REVERSED** and the case **REMANDED** for further proceedings. **REVERSED** and **REMANDED.**

---

[3]*See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 365, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977) ("If an employer should announce his policy of discrimination by a sign reading "Whites Only' on the hiring office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs"); *Tagupa v. Board of Directors,* 633 F.2d 1309, 1311-12 (9th Cir.1980) (incomplete application does not destroy standing; however, it does defeat section 1981 claim on the merits, where it was rejected for incompleteness and not for avowedly discriminatory reason); *Planned Parenthood Association of Chicago v. Kempiners,* 700 F.2d 1115, 1137 (7th Cir.1983) (concurring opinion of Posner, "If a public university had a policy of not admitting any blacks to its medical school, a black would not lack standing to challenge the constitutionality of the policy merely because he might not be admitted if the policy were abandoned ... But he would not have standing if he was two years old") (this case was remanded for further proof on the issue of standing) *Northeastern Florida Chapter of the Associated General Contractors of America,* slip op. cite.