Larry W. MOORE and Naomi
W. Moore, Plaintiffs,

v.

The UNITED STATES DEPARTMENT
OF AGRICULTURE and the Farmer's
Home Administration, Defendants.

Civ. A. No. 3:90–2073.

United States District Court,
W.D. Louisiana,
Monroe Division.

July 13, 1994.

Cary J. Deaton, Metairie, LA, for plaintiffs.

John A. Broadwell, Chief, Civil Div., Asst. U.S. Atty., Shreveport, LA, for defendants.

## MEMORANDUM RULING AND JUDGMENT

MELANCON, District Judge.

*Background and Procedural History* [1]

The Farmer's Home Administration administers the Socially Disadvantaged Farm Ownership Program. *See* 7 U.S.C.A. § 2003 (West 1988 & Supp.1994). This program ensures that members of socially disadvantaged groups are able to receive loans and have the opportunity to purchase or lease farmland held by the FmHA. *Id.*

Plaintiffs submitted an application for the purchase of a farm offered by the FmHA under this program. They subsequently received a letter informing them that the FmHA had rejected their application. The letter contained the following statement:

"You have failed to provide proof that you meet the criteria of SDA. (No whites)"

Plaintiffs then brought suit against the FmHA under the Equal Credit Opportunity Act, 15 U.S.C.A. § 1691, *et seq.* (West 1982), claiming that they were unlawfully denied credit because of their race. The district court dismissed the complaint on the grounds that as plaintiffs failed to complete the application they lacked the standing necessary to bring an ECOA claim. The Court of Appeals for the Fifth Circuit reversed that ruling and remanded the case for further factual development. *Moore v. United States Depart-*

---

1. The facts contained in this narrative are not disputed.

*ment of Agriculture,* 993 F.2d 1222 (5th Cir. 1993).

On remand this Court held a bench trial. Plaintiffs were given the opportunity to prove their ECOA claim. At the close of the evidence this Court took the matter under advisement and ordered the parties to file post-trial briefs addressing the issue of whether the ECOA contained a waiver of the sovereign immunity of the United States.

After review of the evidence presented at the trial and the briefs submitted by the parties, this Court finds that the United States has not waived its immunity from suit under the ECOA; as such this Court lacks the necessary subject matter jurisdiction to decide the dispute. However, if jurisdiction did exist, plaintiffs' claim would fail on the merits for the reasons stated herein.

### Sovereign Immunity and the Equal Credit Opportunity Act

Before beginning any analysis this Court is obligated to determine whether it possesses subject matter jurisdiction over the case. *Mocklin v. Orleans Levee District,* 877 F.2d 427, 428 n. 3 (5th Cir.1989). The defendants are agencies of the United States. The first inquiry, then, is necessarily whether there has been a waiver of sovereign immunity by Congress which allows the plaintiffs to bring this particular action against the United States.

■ The doctrine of sovereign immunity is "inherent in our constitutional structure" and renders the United States and its departments immune from suit except where the United States has consented to be sued. *Williamson v. United States Department of Agriculture,* 815 F.2d 368, 373 (5th Cir.1987); *see also FDIC v. Meyer,* — U.S. ——, ——, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994), *citing Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988) ("Absent a waiver, sovereign immunity shields the Federal Government and its

agencies from suit."). As sovereign immunity is jurisdictional in nature, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Meyer,* — U.S. at ——, 114 S.Ct. at 1000, *citing United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941).

■ For a waiver of the Government's sovereign immunity to be effective it must be "unequivocally expressed." *United States v. Nordic Village, Inc.,* — U.S. ——, ——, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *see also Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). Moreover, the traditional principle is "that the Government's consent to be sued must be construed strictly in favor of the sovereign," *Nordic Village,* — U.S. at ——, 112 S.Ct. at 1015, and is generally not to be liberally construed. *Id.,* at ——, 112 S.Ct. at 1014; *see also United States Department of Energy v. Ohio,* — U.S. ——, ——, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992).

■ This particular matter has been in the District Court once before and was dismissed on standing. The United States Court of Appeals for the Fifth Circuit took exception to that action, reversed the judgment of dismissal, and remanded the case for further development. *Moore v. United States Department of Agriculture,* 993 F.2d 1222 (5th Cir.1993). When remanding the case the Court of Appeals noted that "[w]here there are allegations of direct, overt racial discrimination, as were made here, a court should think long and hard before dismissing a case for lack of 'justiciability.'" *Id.,* 993 F.2d at 1223–24. Consistent with both this directive and its own desire to address the merits of the claim this Court has attempted to fashion a waiver of sovereign immunity under the ECOA which, unlike other statutory schemes,[2] does not contain a provision which

---

**2.** *See* 28 U.S.C.A. § 2674 (West Supp.1994) ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...."); 42 U.S.C.A. § 2000aa–6(a) (West

1981) ("A person aggrieved by a search for or seizure of materials in violation of this chapter shall have a civil cause of action for damages for such search or seizure—(1) against the United States,...."); 43 U.S.C.A. § 390uu (West 1986) ("consent is given to join the United States as a

expressly waives the sovereign immunity of the United States for purposes of the Act. *See Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1014. Despite a genuine and concerted effort, the ambiguities in the ECOA and the "unequivocal" standard by which a waiver of sovereign immunity must be made precludes a finding of such a waiver. The lack of such a waiver prevents this court from exercising subject matter jurisdiction over this dispute. U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C.A. § 1331 (West 1993).

The ECOA provides an applicant for credit a cause of action against "any creditor" who discriminates against the applicant on the basis of "race, color, religion, national origin, sex or marital status." 15 U.S.C.A. §§ 1691(a)(1), 1691e(a) (West 1982). "Creditor" as defined by the Act includes "any person who regularly extends, renews, or continues credit." § 1691a(e) (West 1982). "Person" is defined in part as including a "government or governmental subdivision or agency." § 1691a(f) (West 1982). The sole basis on which to base an argument that the sovereign immunity of the United States has been waived under the ECOA is in interpreting the undefined term "government or governmental subdivision or agency" as including the United States. This would render the United States a "person" and thus a "creditor" under the terms of the Act.

■■■ The utilization of such a construction is faulty on at least two different grounds. One is that such a construction mis-states the nature of the express, unequivocal waiver required by *Nordic Village* and the myriad other Supreme Court decisions addressing this issue. —— U.S. at ——, 112 S.Ct. at 1014. The beginning premise for any sovereign immunity analysis

is that the immunity initially exists. *Meyer,* —— U.S. at ——, 114 S.Ct. at 1000. The next step is a determination that Congress affirmatively intended to waive the immunity. *Id.; see also Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1014. The failure of Congress to distinguish the federal government from that of the states in the term "government" as used in the ECOA does not amount to a waiver of the sovereign immunity of both the states and the federal government. The failure to name the United States is instead just that—the failure of Congress to articulate an intent to waive the sovereign immunity of the United States. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) ("a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed' "), *quoting United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969).[3]

The implausibility of this construction is also readily apparent when the enforcement provisions of the ECOA are read as if the Act contained a waiver of sovereign immunity. The same section under which the plaintiffs seek recovery also grants the Attorney General the authority to bring a civil action against a creditor in violation of the ECOA. *See* 15 U.S.C.A. § 1691e(h) (West 1982). A waiver of sovereign immunity on behalf of the United States would thus give the Attorney General the ability to sue an agency of the United States. Since the representation of the United States is specifically reserved to the Attorney General in actions "in which the United States, an agency, or officer thereof is a party," 28 U.S.C.A. § 516 (West 1993), reading a waiver of sovereign immunity into the ECOA as written would inject a

necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law.").

**3.** The United States argues that "[i]f it were intended that the federal government was to be exempt and the statute limited in its coverage to State and local governments, we would expect that the text of the statute would make such a distinction—or at least the distinction would be identified in the legislative history." This posi-

tion ignores the express language of *Testan* that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." 424 U.S. at 399, 96 S.Ct. at 953.

Nor is the position of the plaintiffs persuasive. They argue that as the ECOA "sounds basically in tort" the waiver provision of the Federal Tort Claims Act, 28 U.S.C.A. § 2674 (West Supp. 1994), applies to the ECOA. Reading the FTCA waiver into the ECOA functionally implies a waiver in the ECOA which, again, is contrary to Supreme Court precedent.

substantial inconsistency into the enforcement provisions of the Act.[4]

It is evident that Congress has decided the United States of America is not to be questioned under the ECOA when it refuses to extend credit to someone. The reasons behind this decision, whatever they may be, are of no moment to this ruling. All that matters is the text of the statute which, as discussed above, does not contain a provision which allows this court to determine whether or not the United States improperly refused to grant credit to one of its citizens. This Court thus lacks the subject matter jurisdiction required to decide whether the United States has unlawfully denied credit to the plaintiffs.

### Recovery Under Bivens

■ In remanding this case the Court of Appeals suggested another cause of action besides the ECOA that may be available to the plaintiffs. Citing *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court of Appeals indicated its belief that "the Moores' allegations pose more than a possibility of recovery under a *Bivens* -type action founded on the equal protection component of the Fifth Amendment." *Moore,* 993 F.2d at 1223. A review of the jurisprudence describing the parameters of *Bivens* -type actions leads this Court to a contrary conclusion.

In *Bivens v. Six Unknown Federal Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court implied a cause of action for damages against federal *agents* who violated the Constitution. In *FDIC v. Meyer,* —— U.S. ——, —— –——, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308 (1994), a unanimous Supreme Court refused to extend *Bivens* to include a cause of action against a federal *agency.* The only defen-

dants that are named in the instant complaint are federal agencies. Unlike *Davis,* in which the sole named defendant was a United States Congressman, 442 U.S. at 229–30, 99 S.Ct. at 2269, no agents of the federal government have been named as defendants. *Bivens* simply does not provide the plaintiffs with a cause of action. *Meyer,* —— U.S. at —— –——, 114 S.Ct. at 1004–06. The only basis on which plaintiffs may bring this particular action is the ECOA which, as discussed above, does not allow for suits against the United States.

### The Merits of Plaintiffs' ECOA Claim

A court without jurisdiction over a dispute is without authority to enter a judgment on the merits. This matter, however, presents an odd combination of facts: both the plaintiffs and the United States contend that the ECOA contains a waiver of the sovereign immunity of the United States. If on appeal the Circuit Court agrees with the parties and finds a waiver in the ECOA there will, in light of the United States' present position, be no appeal to the Supreme Court. The Court of Appeals would then remand the matter for further proceedings.

These proceedings, however, have already been held. The original ruling of the Court of Appeals remanding this matter ordered further factual development of plaintiffs' claim. *Moore v. United States Department of Agriculture,* 993 F.2d 1222 (5th Cir.1993). A bench trial was held and the plaintiffs were given the opportunity to demonstrate that they were entitled to recover damages from the United States under the ECOA.[5] To ensure an expedited resolution of this matter this Court has made specific findings of fact and conclusions of law. Should the Court of Appeals determine that the ECOA does contain a waiver of the sovereign immunity of the United States and reverse the judgment

4. The only logical resolution to this inconsistency would be to allow aggrieved citizens to bring an action against the United States. This would bring the sovereign immunity issue full circle in that there is no provision of the ECOA which demonstrates the intent of Congress to allow such actions.

5. The Court of Appeals recognized that the plaintiffs had "filed suit against the United States

Department of Agriculture under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.,* alleging that they were denied the opportunity to participate in a sale of inventory farmland held by the Farmers Home Administration because they were 'white'." *Moore,* 993 F.2d at 1222. This Court's interpretation of the pleadings is apparently consistent with that of the Court of Appeals.

of this Court on that ground, the findings of fact and conclusions of law set out below will become the ruling of this Court. These demonstrate that plaintiffs could not carry their burden under the ECOA.

### Analyzing an ECOA Claim

Before being able to make any findings of fact or conclusions of law this Court must determine the parameters of the law which controls plaintiffs' case. The ECOA does not describe the proper method of handling these cases. There is also very little jurisprudence to which this court can look for guidance. Neither the United States Supreme Court nor the Court of Appeals for the Fifth Circuit have articulated the proper method of analyzing an ECOA claim as of yet.

The dearth of precedent as to the proper method of handling ECOA claims places this Court in the uncomfortable position of determining exactly how to approach this dispute. For guidance this Court will look to the treatment of ECOA cases by other courts and temper its resolution with language of the Fifth Circuit as it applies to the case at bar.

The Court of Appeals for the First Circuit has approved analyzing an ECOA claim in the manner by which a claim under the Equal Employment Opportunity Act, 42 U.S.C.A. § 2000e-2 *et seq.* (West 1981 & Supp.1994), claim is analyzed. *Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 893 (1st Cir.1992); *see also Williams v. First Federal Savings & Loan Association,* 554 F.Supp. 447, 448–49 (N.D.N.Y.1981) ("protections afforded by the ECOA should be applied in the same manner as those created by" the EEOA), *affirmed,* 697 F.2d 302 (2d Cir.1982). In a similar vein the Fifth Circuit has held that the language of the ECOA is "closely related" to the language of the EEOA. *Bhandari v. First National Bank of Commerce,* 808 F.2d 1082, 1100–101 (5th Cir. 1987), *modified on other grounds on rehearing,* 829 F.2d 1343 (5th Cir.1987). *Bhandari* would suggest, then, that it is proper to approach this case in a manner similar to an EEOA action.

In ruling that the similarities in the language of the ECOA and the EEOA required that a similar analysis be utilized for both acts, the First Circuit also noted that

> [i]t is apparent that the plain language of the statute itself does not resolve a number of questions that are fundamental to its enforcement by the courts. In particular, the statute does not reveal what it is an ECOA plaintiff … must establish in order to make out a prima facie case of unlawful discrimination in a credit decision. . . .

*Mercado–Garcia,* 979 F.2d at 892. Despite the accuracy of that statement and the potential benefit in resolving the issue, the Court of Appeals instead assumed *arguendo* that the plaintiff succeeded in establishing a *prima facie* case and continued with its analysis. *Id.,* at 893.

Much like this Court, however, the district court that was affirmed in *Mercado–Garcia* did not have the luxury of avoiding the arduous task of determining what as a matter of law constitutes a *prima facie* case under the ECOA. *Mercado Garcia v. Ponce Federal Bank, F.S.B.,* 779 F.Supp. 620 (D.Puerto Rico 1991). And also like this Court, it did not have any direct precedent from which to draw in determining what properly constitutes the elements of a *prima facie* case under the ECOA. *Id.* Consistent with the jurisprudence recognizing the similarities between the two acts, that Court attempted to remain parallel to the EEOA in its analysis. It described the elements of a *prima facie* case of discrimination in the context of the ECOA as requiring the plaintiff to show that:

> he was a member of a protected class;
>
> he applied for and was qualified for credit;
>
> despite his qualifications he was rejected; and
>
> that others of a similar credit stature were extended credit or given more favorable treatment than him.

*Mercado Garcia,* 779 F.Supp. at 628. No authority was cited to support this interpretation. *Id.* The court then found that the plaintiff failed to meet his burden of establishing a *prima facie* case.

As mentioned above, the Fifth Circuit has not yet stated the parameters of an ECOA claim in this Circuit. In *Moore,* however, the

court indicated an inclination to analyze ECOA claims in a manner consistent with the approach affirmed by the First Circuit in *Mercado–Garcia:*

> There is no finding, nor any evidence, that the Moores, apart from being white, were not sufficiently qualified in other respects, or would not have been approved and granted the requested loan.

*Moore,* 993 F.2d at 1224. This statement recognizes three of the four elements of a *prima facie* case as articulated by the district court in *Mercado Garcia:* plaintiffs were to have the opportunity to show they were members of a protected class [6] ("apart from being white"); they applied for and were qualified for credit ("were not sufficiently qualified in other respects"); and despite their qualifications they were rejected ("or would not have been approved and granted the requested loan."). 779 F.Supp. at 628, *affirmed sub nom. Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 893 (1st Cir. 1992). The only element utilized by the Court in *Mercado–Garcia* that was not mentioned by the Fifth Circuit was a showing by the plaintiffs that others of a similar credit stature were extended credit or given more favorable treatment than them. *Id.*

The case as described by the Fifth Circuit in *Moore* also parallels the present requirements of a *prima facie* EEOA case. To establish a *prima facie* unlawful refusal-to-hire case a plaintiff must establish four things:

> that he or she belongs to a group protected by the EEOA;
>
> that he or she applied for and was qualified for a job for which applicants were being sought;
>
> that he or she was rejected; and
>
> that after he or she was rejected, the employer continued to seek applicants with similar qualifications.

*Walker v. Jim Dandy Co.,* 638 F.2d 1330, 1333 (5th Cir.1981). To be consistent with the "closely related" language of *Bhandari,* 808 F.2d at 1100–101, and the directive in *Moore,* this Court finds it proper to utilize an approach to an ECOA claim that parallels the analysis of an EEOA refusal-to-hire claim.[7]

In deference to the plaintiffs, this Court will not require them to make out a case that is any wider than that described by the Fifth Circuit when it remanded their action. Following the direction of the Court of Appeals in *Moore,* then, this Court finds as a matter of law that in order to establish a *prima facie* under the ECOA a plaintiff must show that he or she

> is a member of a protected class under the statute;
>
> that he or she applied for and was qualified for credit; and
>
> despite his or her qualifications, the plaintiff was denied credit.

The language of *Moore* aside, this Court sees no reason for imposing the additional burden on a plaintiff of establishing that others of a similar credit stature were treated more favorably, as was done by the Court in *Mercado Garcia.* 779 F.Supp. at 628. On a case-by-case basis, the subjective element involved in comparing the relative credit stature of different individuals, in the opinion of this Court, would compromise an analysis that would otherwise be almost completely objective.[8] It would also require public scrutiny of the personal financial information of third-parties.

Once a *prima facie* case is established, the remaining elements of an EEOA claim are readily applied to the analysis of plaintiffs' claim:

---

**6.** The protected classes under the ECOA are defined by "race, color, religion, national origin, sex, or marital status." 15 U.S.C.A. § 1691(a)(1) (West 1982).

**7.** Although unlawful discharge is also covered by the EEOA, it is clear that a "refusal-to-hire" case is far more similar to a "refusal-to-extend-credit" case.

**8.** Admittedly, the decision as to whether a particular individual is creditworthy or not has an inherent element of subjectivity. However, when viewed under a standard of a reasonable commercial transaction, the area in which "clearly not creditworthy" and "clearly creditworthy" overlap is slight.

The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action;

If the defendant meets this burden by presenting evidence which if believed by the trier of fact would support a finding that unlawful discrimination was not the cause of the action, the presumption raised by the plaintiffs' *prima facie* case essentially disappears;

At that point the plaintiffs are left with the ultimate burden of proving that the defendant intentionally discriminated against them.

*St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *See also Moham v. Steego Corp.,* 3 F.3d 873, 875 (5th Cir.1993).

### Findings of Fact

■ Pursuant to Federal Rule of Civil Procedure 52(a) this Court makes the following findings of fact:

1. Plaintiffs applied to purchase what was known as the Leggitt property from the Farmer's Home Administration. *Testimony of Mr. and Mrs. Moore.*

2. The property was held by the FmHA at the time plaintiffs applied to purchase it. *Testimony of Jerry W. Anderson, County Supervisor for the FmHA.*

3. The FmHA was offering the property for sale pursuant to the Socially Disadvantaged Farm Ownership Program, 7 U.S.C.A. § 2003 (West 1988 & Supp.1994). *Id.; Plaintiffs' Exhibit 5.*

4. Properties offered under the Socially Disadvantaged Farm Ownership Program are sold to buyers who meet FmHA eligibility and socially disadvantaged requirements. *Plaintiffs' Exhibit 5.*

5. To meet FmHA eligibility requirements under the Socially Disadvantaged Farm Ownership Program a person must be a United States Citizen or legal resident of the United States; must have legal capacity to incur debt; must have sufficient training or farming experience; must have an acceptable credit history; must not be larger than a family size operator; and must be unable to obtain credit elsewhere. *Id.; Plaintiffs' Exhibit 2.*

6. To meet FmHA socially disadvantaged requirements under the Socially Disadvantaged Farm Ownership Program a person must be black, but not of Hispanic origin; an American Indian; an Alaskan Native; an Hispanic; an Asian; or a Pacific Islander. *Id.*

7. Plaintiffs received a rejection letter from the FmHA stating that "You have failed to provide proof that you meet the criteria of SDA. (No whites)." *Plaintiffs' Exhibit 1.*

8. Subsequent to the rejection letter the plaintiffs' loan application was reviewed by the County Committee of the FmHA. *Testimony of Jerry W. Anderson.*

9. After review of the plaintiffs' loan application the County Committee rejected plaintiffs' application due to their poor credit history. *Id.*

10. Plaintiffs' credit history demonstrates that plaintiffs have failed to repay two loans made to them by People's Homestead, a bank in Monroe, Louisiana. *Testimony of Mr. and Mrs. Moore; Testimony of Jerry W. Anderson.*

11. Plaintiffs' credit history includes a foreclosure by People's Homestead. *Id.*

12. Plaintiffs' credit history includes a deficiency judgment obtained by People's Homestead against them. *Id.*

13. Plaintiffs' credit history includes a declaration of bankruptcy. *Id.*

14. Plaintiff Larry W. Moore has not held a steady job since 1967. *Testimony of Larry W. Moore.*

15. The plaintiffs' application failed to provide sufficient information to demonstrate the plaintiffs' qualification for a farm ownership loan. *Testimony of Jerry W. Anderson.*

16. Plaintiffs' applied to purchase a second property from the FmHA. *Plaintiffs' Exhibit* 3.

17. This second property was not held or offered by the FmHA under the Socially Disadvantaged Farm Ownership Program. *Plaintiffs' Exhibit* 5.

18. Plaintiffs' application to purchase this second property was denied by the County Commission due to plaintiffs' poor credit history. *Testimony of Jerry W. Anderson.*

19. Plaintiffs have not shown that they were qualified for credit.

### Conclusions of Law

Pursuant to Federal Rule of Civil Procedure 52(a) this Court makes the following conclusions of law:

1. To establish a *prima facie* case under the ECOA a plaintiff must show that he or she is a member of a protected class under the statute; that he or she applied for and was qualified for credit; and despite his or her qualifications, the plaintiff was denied credit.

2. By failing to show that they were otherwise qualified for credit, plaintiffs have failed to prove a *prima facie* case of discrimination under the ECOA.

3. By failing to show that they were denied credit despite their qualifications, plaintiffs have failed to prove a *prima facie* case of discrimination under the ECOA.

### Conclusion

This Court lacks subject matter jurisdiction over this dispute. In the event the United States Court of Appeals for the Fifth Circuit rules that this Court has the necessary jurisdiction to entertain this suit, the findings of fact and conclusions of law set out in this opinion require the dismissal of plaintiffs' claim with prejudice.

### JUDGMENT

As this Court lacks subject matter jurisdiction over this dispute, IT IS ORDERED that plaintiffs' action be DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that if this matter is appealed and the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court rules that the Equal Credit Opportunity Act contains a waiver of the sovereign immunity of the United States and that this Court has the necessary jurisdiction to resolve the merits of plaintiffs' claim, that the findings of fact and conclusions of law articulated in the memorandum ruling be applied to plaintiffs' claims and that plaintiffs' action be DISMISSED WITH PREJUDICE.