BayBank[1] *vs.* Henry J. Bornhofft, Third, & others.[2]

Essex. April 9, 1998. - June 3, 1998.

Present: Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Practice, Civil,* Summary judgment, Standing. *Equal Credit Opportunity Act. Administrative Law,* Agency's interpretation of statute, Agency's authority, Regulations. *Consumer Protection Act,* Bank, Collection of debt, Availability of remedy. *Words,* "Applicant," "Joint applicant."

In a counterclaim alleging that a bank violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f (1994), and G. L. c. 93A, by requiring the defendant's signature as guarantor on a credit instrument on which she was not the applicant, the judge erred in ruling that the defendant lacked standing, where the defendant was an "other person" within the meaning of 12 C.F.R. § 202.7(d)(1) entitled to protection under the statute [576-578]; however, where the defendant was a "joint applicant" within the meaning of 12 C.F.R. § 202.7(d)(1) insofar as she applied contemporaneously with the applicant for shared credit, the bank properly demanded her signature on the loan documents [578-579].

A claim that a bank violated G. L. c. 93A, by participating in bad faith in negotiations with a consumer to work out a loan liability, was improperly dismissed without appropriate findings and rulings, and the matter was remanded for further proceedings. [580]

In a civil action involving a disputed loan agreement, the judge's award of attorney's fees to the plaintiff bank was reasonable. [580]

Civil action commenced in the Superior Court Department on April 11, 1994.

The case was heard by *Charles M. Grabau,* J., on motions for summary judgment, and a motion for assessment of damages was heard by *Peter F. Brady,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John D. Hanify* for Nancy L. Bornhofft.

[1]Formerly known as BayBank Middlesex.

[2]Nancy L. Bornhofft; Henry J. Bornhofft, Third, and J. Eric Bornhofft, trustees of Gloucester-Yankee Trust No. 1; and Gloucester Yankee Marine Service, Inc. Nancy L. Bornhofft is the only defendant before the court in this appeal.

*David J. Gallagher* for the plaintiff.

FRIED, J. The plaintiff bank brought a collection action against various parties, including the defendant, Nancy L. Bornhofft, to collect on a $440,000 note in default. She counterclaimed, alleging that the bank violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f (1994) (ECOA), and G. L. c. 93A, by requiring her signature on the note. The judge granted summary judgment for the bank, finding that the defendant lacked standing to seek redress under ECOA. We affirm in part and remand in part for further proceedings.

## I

The Superior Court judge found the following facts. In 1983, Henry J. Bornhofft, Third (Henry), bought out two partners to acquire control over Gloucester Yankee Marine Service, Inc. (GYMS), a full-service yacht yard in Gloucester owned by a trust established in 1982 (trust). Henry thereupon became the one hundred per cent beneficiary of the trust. In 1985, the defendant, Henry's mother, gave Henry $50,000 in exchange for a twenty-five per cent interest in the trust. At that time, the yacht yard was worth approximately $600,000. The defendant apparently often assisted Henry financially. During the period from 1984 to 1994, for example, she gave over $650,000 to Henry or to other individuals on his behalf.

In July, 1987, GYMS was suffering a severe cash flow shortage, and its primary lender had begun foreclosure proceedings against GYMS and the trust. Henry was also seriously delinquent on a number of personal loans. In 1987, Henry completed a business plan and a loan application for the bank in order to secure additional financing of $400,000 to $500,000. The business plan showed that GYMS had a year-end net income of $31 as of April 30, 1987. On the application, Henry designated the trust as the borrower and under the words "Guarantees: names of persons who will guarantee or endorse loan," Henry listed himself as seventy-five per cent beneficiary of the trust and his mother, the defendant, as twenty-five per cent beneficiary. Henry signed the application on the trust's behalf. Henry did not inform the defendant of this, nor did the bank request or receive any financial or net worth information about her.

Based on the application, the bank completed a commitment letter setting forth the terms of the loan and providing that the

defendant would be personally liable for the loan obligations as comaker of the loan. Both Henry Bornhofft and the defendant signed the letter. The bank then drafted the loan instruments, and on July 24, 1987, a promissory note in the amount of $440,000 was executed by Henry Bornhofft and the defendant as "Borrower," and endorsed by Henry Bornhofft as trustee of the trust as guarantor.

In November, 1989, the defendant was assigned Henry Bornhofft's seventy-five per cent interest in the trust after she paid $285,000 to another creditor, Richard Ravech, to rescue Henry from foreclosure proceedings. At that time, she acknowledged that she was comaker of the $440,000 note with the bank and agreed to make all payments on the loan. In 1989, the defendant also signed several forbearance agreements under which the bank agreed to forbear from collection activities for a one-year period.

On April 11, 1994, the bank filed a complaint against Henry Bornhofft and his mother, individually; J. Eric Bornhofft and Henry Bornhofft as trustees of the trust; and GYMS, to recover on the $440,000 note and on a second $45,000 note to GYMS. See note 2, *supra*. After Henry Bornhofft sought bankruptcy protection, the bank dismissed its claims against him. On May 18, 1994, the defendant filed a counterclaim alleging that the bank had violated ECOA and G. L. c. 93A. Both parties filed motions for summary judgment, and on September 22, 1995, the judge denied the defendant's motion and entered judgment for the bank. In a revised memorandum of decision filed March 11, 1996, the judge held that the defendant did not have standing under ECOA because neither she nor the trust was a member of a class protected by the statute. We transferred the defendant's appeal to this court on our own motion.

## II

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Yakubowicz v. Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989). . . . We may consider any ground supporting the judgment." (Citations omitted.) *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). "[A] party moving for summary judgment in a

case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

A

ECOA provides that:

> "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction: (1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . ."

15 U.S.C. § 1691(a)(1). ECOA defines an applicant as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit." 15 U.S.C. § 1691a(b).[3] ECOA provides a remedy for violation of the act: a Federal civil action against the creditor for damages, punitive damages not to exceed $10,000, and attorney's fees. See 15 U.S.C. § 1691e(a), (b), (d).[4]

Pursuant to its statutory authority, 15 U.S.C. § 1691b, the Federal Reserve Board (board) has promulgated regulations under ECOA. See 12 C.F.R. §§ 202 et seq. (1997) (Regulation B). Prior to January 1, 1986, Regulation B excluded guarantors from the definition of the term "applicant," and thus from the protection of ECOA.[5] On that date the board amended the definition of "applicant" as follows:

---

[3]ECOA defines "person" as "a natural person, a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association." 15 U.S.C. § 1691a(f). 12 C.F.R. § 202.2(x).

[4]ECOA also provides that a court may issue "equitable and declaratory relief as is necessary" to enforce the act. 15 U.S.C. § 1691e(c). Courts have used this provision to allow a debtor to assert a counterclaim for recoupment under ECOA. See *Silverman* v. *Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 32 (3d Cir. 1995).

[5]Prior to January 1, 1986, Regulation B defined applicant as:

> "Applicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may be contractually liable regarding an extension of credit other than a

"Applicant means any person who requests or has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers and similar parties."

12 C.F.R. § 202.2(e). In support of this change, the board's official staff commentary regarding Regulation B states:

"The principal effect of the change is to give guarantors and similar parties standing to seek legal remedies when a violation occurs under § 202.7(d). . . . The Board has included guarantors and similar parties within the definition of 'applicant' to resolve th[e] question of standing."

50 Fed. Reg. 48,020 (1985) (official staff commentary).

Section 202.7(d) of Regulation B sets out rules governing applications for credit. Section 202.7(d)(1) states that a creditor

"shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested."

12 C.F.R. § 202.7(d)(1). The usual application of § 202.7(d)(1) prohibits a creditor from requiring the signature of an applicant's spouse if the applicant is otherwise qualified for a loan. See *Anderson* v. *United Fin. Co.*, 666 F.2d 1274, 1276 (9th Cir. 1982). If additional guarantors are required, an applicant's spouse may serve as guarantor but may not be required to do so in the place of an acceptable substitute. See 12 C.F.R. § 202.7(d)(5). In addition, the board has made clear that because a guarantor is to be considered an applicant for the purposes of § 202.7(d), a creditor may not require the signature of a guarantor's spouse:

"The rules in § 202.7(d) bar a creditor from requiring the signature of a *guarantor's spouse* just as they bar the creditor from requiring the signature of an *applicant's*

guarantor, surety, endorser, or similar party." 12 C.F.R. § 202.2(e) (1985).

*spouse.* For example, when all officers of a closely held corporation are required to personally guarantee a corporate loan, a creditor may not automatically require that spouses of married officers also sign. However, an evaluation of the financial circumstances of an officer may indicate that an additional signature is necessary, and this may be the signature of a spouse in appropriate circumstances."

50 Fed. Reg. 48,052 (1985) (official staff commentary).

## B

The bank argues, and the Superior Court judge agreed, that the defendant does not come within the class of persons protected by ECOA and thus cannot avail herself of the statute. As the Court of Appeals for the First Circuit has stated, the protected class approach used under the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e-2 (EEOA), is generally an appropriate model in the ECOA context. See *Mercado-Garcia* v. *Ponce Fed. Bank*, 979 F.2d 890, 892-893 (1st Cir. 1992) (requiring plaintiff who alleged discrimination by bank in credit decision to prove prima facie case). When it is alleged that a loan was denied for discriminatory reasons, for example, courts have required ECOA litigants to show that they are members of a class protected by the statute and to plead a prima facie case of discrimination. Various courts have made this analogy. See *Bhandari* v. *First Nat'l Bank of Commerce*, 808 F.2d 1082, 1100-1101 (5th Cir. 1987) (applying EEOA analysis to claim of discrimination in credit transaction and finding no prima facie case); *Gross* v. *United States Small Business Admin.*, 669 F. Supp. 50, 53 (N.D.N.Y. 1987), aff'd, 867 F.2d 1423 (2d Cir. 1988) (applying burden-shifting devices of EEOA to claim that creditor discriminated in denying loan application); *Williams* v. *First Fed. Sav. & Loan Ass'n*, 554 F. Supp. 447, 449 (N.D.N.Y. 1981), aff'd, 697 F.2d 302 (2d Cir. 1982) (applying EEOA disproportionate impact and disparate treatment analyses to plaintiff's claim of discrimination based on sex and marital status).

When a creditor allegedly violates the provisions of Regulation B, however, courts have not followed the protected class analysis required in most discrimination actions because the board has already determined that such behavior constitutes discrimination. See *Miller* v. *American Express Co.*, 688 F.2d

1235, 1238 (9th Cir. 1982); *Gross, supra* at 53. A court need not engage in the generalized analysis used to determine standing under ECOA itself, because Regulation B specifically provides standing to those that it protects. So long as Regulation B, specifically 12 C.F.R. § 202.7(d)(1), is a valid application of the board's authority pursuant to 15 U.S.C. § 1691b, an "applicant" in circumstances that fall within its bounds has standing to seek judicial relief. The term "applicant" includes guarantors, 12 C.F.R. § 202.2(e), and protection is extended to any "person." 12 C.F.R. § 202.2(x).

Given the regulation, the judge erred in ruling that the defendant lacked standing to bring an ECOA challenge to the transaction. The bank cannot mount a back-door challenge to Regulation B to limit its scope by superimposing standing requirements applicable to an action under the statute alone. Instead, the bank may only attack Regulation B directly, by arguing that the board's protection of "other person[s]" in 12 C.F.R. § 202.7(d)(1) exceeds its authority under ECOA. Forbidding a creditor from requiring the signature of *any* additional person, not just the signature of a spouse,[6] seems to transform ECOA from an "equal credit" act into a "fair credit" statute. Section 202.7(d)(1) becomes a blanket prohibition on over-securing loans by demanding, perhaps not in a discriminatory fashion at all, that a borrower provide additional guarantors. Although we have doubts about whether Congress intended ECOA to take this form, and thus about the board's authority to extend Regulation B to cast such a broad net, the issue is not properly before us. We generally, of course, defer to an agency's interpretation of its governing statute, as evidenced by the regulation the agency promulgates. See, e.g., *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-844 (1984); *Protective Life Ins. Co.* v. *Sullivan,* 425 Mass. 615, 618-619 (1997). This does not mean, however, that we will never find that an agency, including a Federal agency whose regulations are properly before us for enforcement, has exceeded the scope of its authority in promulgating regulations. See, e.g.,

---

[6]Reported cases involving 12 C.F.R. § 202.7(d)(1) uniformly deal with situations in which a creditor has required that an applicant's spouse sign a loan agreement. See, e.g., *Silverman* v. *Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28 (3d Cir. 1995); *Integra Bank* v. *Freeman,* 839 F. Supp. 326 (E.D. Pa. 1993); *Marine Am. State Bank* v. *Lincoln,* 433 N.W.2d 709 (Iowa 1988). We find no reported cases involving "other person" within the meaning of § 202.7(d)(1).

*Governors of the Fed. Reserve Sys.* v. *Dimension Fin. Corp.*, 474 U.S. 361, 368, 373 (1986) (holding that the board's interpretations of the Bank Holding Company Act exceeded its statutory authority); *Protective Life Ins. Co.* v. *Sullivan, supra* at 618 ("we have overruled an agency's interpretation when it is contrary to the plain language of the statute and its underlying purpose"). Because the bank did not brief or argue the proposition that the board exceeded its statutory mandate under 15 U.S.C. § 1691b in enacting 12 C.F.R. § 202.7(d), we do not reach this question.

Moreover, we need not do so, because we can dispose of this appeal on less drastic grounds. Section 202.7(d)(1) states that "a creditor shall not require the signature of an applicant's spouse or other person, *other than a joint applicant,* on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness" (emphasis added). We hold that, as a matter of law, the bank was entitled to summary judgment because even when the facts are viewed in the light most favorable to the defendant, the defendant was a joint applicant for the $440,000 note.

The official staff interpretation to Regulation B states:

> "The term joint applicant refers to someone who applies contemporaneously with the applicant for shared or joint credit. It does not refer to someone whose signature is required by the creditor as a condition for granting the credit requested."

12 C.F.R. Part 202, Supp. I, par. 7(d)(1). This provides two clues about the meaning of the term "joint applicant." First, the act of applying must be contemporaneous, not sequential. This temporal requirement guards against the very situation that § 202.7(d) was designed to avoid — where a creditor receives an application from one person and then later requires an additional signature. Second, the application must be "for shared or joint credit." We take this to mean that the two persons must have some common interest in the credit requested. Neither the statute nor Regulation B, however, defines what type of common interest suffices for the purposes of § 202.7(d)(1). Webster's Third New Int'l Dictionary 1219 (1961) defines "joint" as "shared by or affecting two or more: held or obligating or obligated in common." Similarly, "share" is defined as "to participate in, take, possess, or undergo in common." *Id.* at 2087.

Few courts have been asked to confront this issue. In *Midlantic Nat'l Bank* v. *Hansen,* 48 F.3d 693 (3d Cir.), cert. denied, 515 U.S. 1184 (1995), the Court of Appeals for the Third Circuit held that a husband and wife were joint applicants and thus that the creditor bank permissibly required the wife's signature on loan documents. Although noting that the wife was not actively involved in the day-to-day operations of their joint business, *id.* at 699, the court based its decision on the fact that the husband and the wife jointly owned the assets used to collateralize their loan. *Id.* at 700. This joint ownership was deemed sufficient to constitute joint application. In *Riggs Nat'l Bank* v. *Webster,* 832 F. Supp. 147, 151 (D. Md. 1993), the court held the wife of an individual applicant was de facto a joint applicant even though she did not sign the loan application, because the loan was secured for the purpose of refinancing a building owned exclusively by the wife and the financial statements submitted to the creditor included both jointly owned properties and properties the wife owned independently.

Both requirements mentioned in the official staff interpretation are satisfied here. There was contemporaneous application, because Henry listed the defendant as a coguarantor with him on the original application by the trust and the defendant signed the original commitment letter that put the loan machinery in motion. In addition, the defendant held an ownership interest in the trust, the property of which was used to collateralize the loan.[7] The words "shared" and "joint" in the official staff interpretation are satisfied by an ownership interest. The combination of contemporaneous application and an ownership interest in the trust suffices to make the defendant a "joint applicant" for the purposes of ECOA. As a result, her action under the statute and Regulation B is without merit, and it was entirely permissible for the bank to demand her signature on the loan documents.

## C

The defendant also argues that the judge erred in dismissing her c. 93A claim without discussion. The defendant bases her c. 93A claim on the same assertion underlying her ECOA action: that "the Bank knew that Henry was independently

---

[7]At the time of the application to the bank, the defendant owned a twenty-five per cent share of the trust. In 1989, she acquired Henry's seventy-five per cent interest in the trust.

creditworthy'' but nevertheless required the defendant's signature. In keeping with our holding above, to the extent that the defendant's c. 93A claim is based on an alleged violation of ECOA, it is without merit. The defendant also argues, however, that the bank violated c. 93A by participating in workout negotiations with the defendant in bad faith. She claims that the bank negotiated with her for the sole purpose of discovering her assets, and then wrongfully proceeded against her rather than collecting on the loan by foreclosing on the yacht yard and other collateral. The defendant characterizes the bank's behavior as "designed to take advantage of an unsophisticated consumer."

The judge's dismissal of this aspect of the defendant's c. 93A claim without discussion requires that we remand for further proceedings. The absence of findings or rulings on this issue bars us from resolving it here.

### D

Finally, the defendant argues that the judge erred in awarding the bank $95,000 in attorney's fees. The judge did so after reviewing affidavits submitted by the parties and holding a hearing on the issue to clarify uncertainties about what portion of the bank's $102,385 request for fees should be attributed to the $440,000 note, for which the defendant was liable, and what portion to the $45,000 GYMS note, for which she was not. The judge's award amounts to approximately fifteen per cent of the $595,489 that the defendant owes on the $440,000 note, which is an entirely reasonable fee. Thus, the defendant is left with the rather technical complaint that the judge failed to explain his $95,000 award sufficiently, leaving open the possibility that his analysis failed to distinguish between the fees fairly attributable to the two notes. Given that the judge discounted the bank's request by approximately ten per cent and that the smaller note was worth only ten per cent of the larger, it is clear that the judge attempted to allocate fees fairly and reasonably. There was no error.

### III

In accord with our reasoning in subsections A, B, and D, of section II, *supra*, the judgment is affirmed. We remand this matter for further proceedings on the limited question whether there

remains a claim for relief under G. L. c. 93A independent of the defendant's claims under ECOA.

*So ordered.*