van Gestel, Allan, J.
This matter is before the Court on cross motions for summary judgment. Each side asserts that there are no material facts in dispute.
In their Superior Court Rule 9A filings the parties have provided over 110 separate statements of facts, almost all of which, with minor modifications, are not disputed. From that mass of information, the Court will state the necessary undisputed facts for purposes of the present motions.

BACKGROUND

Neptune Towers Associates (“Neptune Towers”) is a Massachusetts limited partnership, formed in 1971 for the purpose of developing, owning, and managing 334 units of rental housing in Lynn, Massachusetts. Neptune Towers is governed by a written partnership agreement (the “Partnership Agreement").
The principal asset of Neptune Towers was the property known as Neptune Towers Apartments located at 130-160 Neptune Boulevard in Lynn. This property was sold on February 28, 2002 to Community Development Trust (“CDT’) for $13.2 million. About 1 /2 of the sale price was available for distribution after payment of the mortgage and other expenses.
The General Partners of Neptune Towers are: Irene M. Bailey, with a23.595% capital ownership and profit sharing interest; Ricci A. LaCentra, with a 10.285% interest; Loretta C. LaCentra, with a 10.285% interest; the late Irene M. LaCentra, with a 10.285% interest; Roy Cheever, with a 3.025% interest; and Phyllis Kerr, with a 3.025% interest. These General Partners hold a 60.5% capital ownership and profit sharing interest in Neptune Towers.
Ricci A. LaCentra is Irene M. Bailey’s brother; Loretta C. LaCentra is married to Ricci A. LaCentra; and the late Irene M. LaCentra was Irene M. Bailey’s mother.
Roy Cheever and Phyllis Kerr were long standing employees of the LaCentra family business.
Irene M. Bailey and Ricci A. LaCentra are the two “Managing General Partners” of Neptune Towers.
The Partnership Agreement includes two classes of Limited Partners, Class A and Class B. In the Rule 9A statement of the plaintiffs only those Class A Limited Partners who are plaintiffs are mentioned.[3] They include the following: Russell S. Knapp, with a 8.75% capital ownership and profit sharing interest; Stephen A. Lieber, with a 6.5625% interest; the Trustees of the Emil Buehler Perpetual Trust, with a 5.625% interest; Peter Cohen, with a 2.91% interest; Ronald N. Cohen, with a 2.92% interest; Christopher Brody, with a 1.46% interest; and Greg Brody with a 1.46% interest. These Class A Limited Partners hold a 29.6875% capital ownership and profit sharing interest in Neptune Towers.
The remaining 9.8125% capital ownership and profit sharing interest in Neptune Tower is not accounted for in the Rule 9A statement, or otherwise.
The Partnership Agreement requires the prior written approval by at least two-thirds of the Class A Limited capital ownership interest before Neptune Towers may sell the partnership assets, the Neptune Apartments.
The Partnership Agreement gives the General Partners the sole right to manage the business of Neptune Towers. It also provides that no Limited Partner shall participate in or have control over the partnership business and that the Limited Partners consent to the employment by the General Partners “when and if, in the sole discretion of the General Partners, the same is deemed necessary or advisable, of such brokers, agents, or attorneys as the General Partners may determine (notwithstanding that any parties to this *5 Agreement may have an interest in, or be one of, such brokers, agents or attorneys).”
The Partnership Agreement also authorized the General Partners to enter into agreements and contracts with affiliated persons. It specifically states in Section 6.9 that the “fact that a Partner or a member of his family is employed or directly interested in or connected with any Person or Entity employed by the Partnership to render or perform a service . . . shall not prohibit the General Partners from employing or otherwise dealing with such Person or Entity . . .”
On May 3, 1999, Neptune Towers entered into a written Real Estate Brokerage Agreement (the “Broker Agreement”) with William E. Bailey, who is Irene M. Bailey’s husband. The Broker Agreement gives William Bailey the sole and exclusive authority to sell the Neptune Apartments during the period from May 3, 1999 through May 3, 2003, specifies a price of $20 million, and provides for payment of a 6% commission to William Bailey upon the sale of the Neptune Apartments. The Broker Agreement was executed on behalf of Neptune Towers by Irene M. Bailey, Irene M. LaC-entra and Loretta C. LaCentra.
On August 30, 1999, Neptune Towers entered into a written agreement with Timothy J. Aluise (“Aluise”) providing that if Aluise found a buyer for the Neptune Apartments he “would be compensated like a broker, receiving 2% of the sale price as a fee.”
By July of 2000, it was “pretty much” determined that CDT would be the buyer of the Neptune Apartments. By letter dated July 12, 2000, William Bailey informed the Limited Partners that Neptune Towers was pursuing the sale of the Neptune Apartments. In that letter he identified members of the team working on the sale as including accountant Joseph Stanton, attorney Jerrold Olanoff, and Aluise. He also noted that Aluise “has introduced us to three prospective buyers” and that “[t]wo of these parties have expressed strong interest in buying the properly.” William Bailey did not describe his role as a broker in the effort to sell the Neptune Apartments. Under his signature, he describes himself as “Counsel to Neptune Tower Associates.”
By letter dated September 26, 2000, William Bailey announced to the Limited Partners that the Managing General Partners had decided to sell the Neptune Apartments to CDT. Knowing that they needed a percentage of the Limited Partners to approve the sale, the September 26 letter included a statement that it was “imperative” that each partner sign and return an enclosed authorization form. This letter did not disclose that William Bailey had a broker’s interest in the transaction.
The required Class A Limited Partner authorization was obtained by October 2000. William Bailey then sent an October 31, 2000, letter to the Limited Partners informing them that a majority of the partners had authorized the Managing General Partners to proceed with the sale to CDT. The letter was signed as “William Bailey, J.D., Ph.D. Counsel to Neptune Tower Associates.”
There was no communication with any of the Limited Partners from William Bailey regarding the Broker Agreement.
Neptune Towers paid a broker’s fee to William Bailey of $796,327.74 in February 2002. William Bailey paid $398,163.87 to Ricci A. LaCentra as a “consultant fee.”
All parties agree that the Class A Limited Partners would not have consented to the sale of the Neptune Apartments if they had known that William Bailey was getting a $796,000 broker’s fee. It was not until October 18,2002, however, in correspondence between Mr. Olanoff and attorney Charles Knapp, the latter of whom was acting for Russell Knapp, a Limited Partner, that William Bailey was identified as the broker. This letter also identified payments of $8,280 to an accountant, $78,720 to Mr. Olanoff, and a “Finders fee” of $40,000[4] to Aluise.
William Bailey also was paid $173,936.20 for legal services in connection with the Neptune Apartments sale.
The plaintiff Russell Knapp is an attorney as, of course, is William Bailey. This may well have contributed to the fact that there are seven separate counts in the Complaint and the Counterclaims, as follows: in the Complaint — Count I, a derivative claim for breach of fiduciary duty against the General Partners; Count II, a derivative claim against William Bailey; Count III, a claim for breach of fiduciary duty against the General Partners; and Count IV, a breach of fiduciary duty claim against William Bailey; and in the Counterclaims — Count I, for abuse of process; Count II, for civil conspiracy; and Count III for defamation.

DISCUSSION

Rule 56(c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We view the evidence in the light most favorable to the nonmov-ing party. See BayBank v. Bornhofft 427 Mass. 571, 573 (1998).
Vittands v. Sudduth, 49 Mass.App.Ct. 401, 405-06 (2000).
Thus, summary judgment is granted where, viewing the evidence in the light most favorable to the non-moving party, there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Cabot Corporation v. AVX Corporation, 448 Mass. 629, 636-37 (2007); Hakim v. *6 Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). “(T]he moving party must establish that there are no genuine issues of material fact, and that the non-moving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
While we examine the record in its light most favorable to the nonmoving party, Foster v. Group Health, Inc., 444 Mass. 668, 672 (2005), “(c)onclus-oiy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment” (citations omitted). Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n., 399 Mass. 886, 890 (1987). “If the opposing party fails properly to present specific facts establishing a genuine, triable issue, summary judgment should be granted.” Id.
O'Rourke v. Hunter, 446 Mass. 814, 821-22 (2006).
“ ‘[T]he party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.’ Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 397 (1994), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1994).” Symmons v. O’Keefe, 419 Mass. 288, 293 (1995). See also DiPietro v. Sipex Corp., 69 Mass.App.Ct. 29, 36 (2007).
Here, of course, there are cross motions. Consequently, the Court may be required to shift the burdens and presumptions back and forth depending upon which motion it is addressing. It really would be a better approach, if the parties were able to do it, to present an agreed statement of facts and then ask the Court to proceed as if on a case stated.

The Claims in the Complaint.

The legal question that dominates the Complaint relates to the duty, if any, of the General Partners to the Class A Limited Partners, under the Neptune Towers Agreement, to have disclosed that William Bailey was acting as the real estate broker — and the details of his commission agreement — on the sale of the Neptune Apartments to CDT.
[Nondisclosure does not amount to fraud and is not a conventional tort of any kind. The classic expression of this view is by Justice Qua in Swinton v. Whitinsville Sav. Bank, 311 Mass. 677 (1942) . . . We note that the nondisclosure question is revisited in Restatement (Second) of Torts, sec. 551 [1977]. The Restatement concludes that nondisclosure can be actionable only where there is a “duty” to disclose, and a duty arises only in a number of discrete situations described in sec. 551. Greenery Rehabilitation Group, Inc. v. Antamarian, 36 Mass.App.Ct. 73, 77-78 (1994).
Wolf v. Prudential-Bache Securities, Inc., 41 Mass.App.Ct. 474, 476 (1996).
The Court turns then to the Restatement (Second) of Torts, sec. 551(2), and the parts thereof that may apply here. It reads:
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
(a) matters known to him that the other is entitled to know because of a fiduciaiy or similar relation of trust and confidence between them; and
(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statements of facts from being misleading; and
* * * * *
(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.
The General Partners here are partners with the Class A Limited Partners in a Massachusetts limited partnership. “[A] general partner of a limited partnership is subject to the liabilities of a partner in a partnership without limited partners and ... is subject to the restrictions of a partner in a partnership without limited partners.” G.L.c. 109, sec. 24. A general partner owes “to the other general partners a duty of utmost good faith and loyalty.” JRY Corp. v. LeRoux, 18 Mass.App.Ct. 153, 166 (1984). Consequently, under sec. 551(2) (a) of the Restatement, the defendants who are General Partners of Neptune Towers had a fiduciaiy relationship with the Class A Limited Partners.
Thus, the question under this portion of the Restatement becomes whether the General Partners breached that fiduciaiy relationship or duty.
The Supreme Judicial Court, as recently as June 4, 2007, when speaking of the fiduciaiy duty owed by directors to their stockholders, said:
Directors owe a fiduciaiy duty to their shareholders . . . When the rights of stockholders arise under a contract, however, the obligations of the parties are determined by reference to contract law, and not by the fiduciaiy principles that would otherwise govern. When a director’s contested action falls entirely within the scope of a contract between the director and the shareholders, it is not subject to question under fiduciaiy duty principles.
Chokel v. Genzyme Corp., 449 Mass. 272, 330-31 (2007).
*7 Here the management of Neptune Towers is wholly controlled by the Partnership Agreement. By that Agreement the General Partners have the sole right to manage the business of Neptune Towers. No Limited Partner shall participate in or have control over the partnership business and the Limited Partners consented to the employment by the general partners “when and if, in the sole discretion of the General Partners, the same is deemed necessary or advisable, of such brokers, agents, or attorneys as the General Partners may determine (notwithstanding that any parties to this Agreement may have an interest in, or be one of, such brokers, agent or attorneys).”
The Partnership Agreement also authorized the General Partners to enter into agreements and contracts with affiliated persons. The “fact that a Partner or a member of his family is employed or directly interested in or connected with any Person or Entity employed by the Partnership to render or perform a service . . . shall not prohibit the General Partners from employing or otherwise dealing with such Person or Entity...”
Therefore, when selling partnership real estate the General Partners had full and unfettered authority to engage a real estate broker; and it would not be a violation of the Partnership Agreement if that broker— like William Bailey — was a member of a General Partner’s family. There can be no finding of a breach of a partner’s fiduciary duty to another partner to take action specifically authorized by the Partnership Agreement.
The Court turns next to Restatement sec. 551 (2)(b). Were any matters known to the General Partners regarding the engagement of William Bailey to act as the broker for the CBT deal information that the General Partners knew to be necessary to prevent any partial or ambiguous statements of facts by them from being misleading to the Class A Limited Partners? This Court thinks not.
Here there were no statements at all by the General Partners about who would be the broker, what he or she might do, or what any commission might be. There was, therefore, nothing ambiguous in anything the General Partners said on that subject. Nor, as observed above, it cannot be said to be misleading to proceed with a major real estate transaction without stating the obvious — that a broker or brokerage firm would be involved and be paid a commission for the work involved. Certainly, people like the Limited Partners here, with years of experience involved with Neptune Towers and other sophisticated real estate deals, cannot reasonably say that they were misled into approving the sale of the Neptune Apartments without being told there would be a compensated broker involved.
While not of any particular relevance to the present issues, the Court observes the June 1, 2007 Affidavit of John M. Peckham (“Peckham”), attached to the defendants’ materials. Peckham describes himself as the principle [sic] of Peckham Boston Company, apparently a real estate brokerage, who opines that the “6% commission [paid to William Bailey] was fair compensation for a sale of this complexity.” In short, the broker’s commission was fair, and consistent with local custom and practice. There is no contrary affidavit submitted on behalf of the Class A Limited Partners.
Finally, the Court directs its attention to Restatement sec. 551(2)(e). Were the facts that William Bailey was the broker on the sale of the Neptune Apartments, “facts basic to the transaction” and did the General Partners know that the Class A Limited Partners were about to approve the sale “under a mistake as to them”? Was this a matter which the General Partners, because of the relationship between them and Class A Limited Partners, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts? Again, this Court thinks not.
The fact that there would be a broker involved, who would be paid for his or her services, is no more basic to a real estate transaction of the kind involved here than would be the fact that there was a purchase and sale agreement, a deed, a recording of the deed, perhaps a discharge of a mortgage, perhaps the provision for title insurance, and the assistance of counsel as well. As stated in Comment on Clause (e), j, to Restatement sec. 551, “[a] basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with.”
“In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiffs ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware.” Comment on Clause (e), 1. Nothing of that sort is shown here.
William Bailey was not a partner or trustee of any of the Class A Limited Partners, he was not engaged by them as their attorney, and, obviously, he was not engaged by them to sell the Neptune Apartments. There is nothing in the summary judgment record showing that William Bailey owed any fiduciary duty to the Class A Limited Partners. Nor is there anything in the summary judgment record to show that he owed any common-law or contractual duty to the Class A Limited Partners.
Thus neither Count III by the Class A Limited Partners for breach of fiduciary duty against the General Partners, nor Count IV by the Class A Limited Partners for breach of fiduciary duty claim against William Bailey can stand.
*8 Further, and for similar reasons, particularly the fact that the General Partners run Neptune Towers and did nothing not authorized in the Partnership Agreement, neither Count I stating a derivative claim for breach of fiduciary duty against the General Partners, nor Count II stating a derivative claim against William Bailey can stand.

The Counterclaims

Count I of the Counterclaims seeks relief for abuse of process. To succeed on such a claim the defendants must show: the use of process; for an ulterior or illegitimate purpose; resulting in damage. Ladd v. Polidaro, 424 Mass. 196, 198 (1997); Jones v. Brockton Pub. Markets, Inc., 369 Mass. 387, 389 (1975).
The Class A Limited Partners here, however, used the process of the court for a legitimate, not an ulterior or illegitimate, purpose. Suit for alleged breaches of fiduciary duty, either directly or derivatively, are not an abuse of process. Further, the mere fact that summary judgment against such a suit has been found does not mean that the Complaint was an abuse of process.
Count II presents a claim for civil conspiracy. There must be shown a combination of two or more persons, acting by illegal means, or for an illegal purpose, resulting in damages. Kurker v. Hill 44 Mass.App.Ct. 184, 188-89 (1998). As with Count I, neither the requisite illegal means or illegal purpose have been demonstrated in the summary judgment record.
Count III presents a claim for defamation. This Count requires a defamatory statement of fact made either negligently in the case of a private figure or with malice in the case of a public official or figure resulting in damage. Here, the defamation is said to be the bringing of the Complaint and the allegations therein. There is, however, an absolute privilege for statements made by a party or counsel during the course of a governmental proceeding, including court proceedings. Correllas v. Viveiros, 410 Mass. 314, 319 (1991); Stepanischen v. Merchants Dispatch Transp. Corp., 722 F.2d 922, 932 (1st Cir. 1983). See also Aborn v. Lipson, 357 Mass. 71, 72-73 (1970). That privilege applies here.
None of Count I for abuse of process, Count II for civil conspiracy or Count III for defamation can survive summary judgment.

ORDER

For the foregoing reasons, the Defendants’ Joint Motion for Summary Judgment, Paper #38, and the Plaintiffs’ Motion for Summary Judgment, Paper #39, are each ALLOWED. Judgment dismissing the Complaint and all Counterclaims shall enter accordingly.

The Class B Limited Partners, whoever they may be, are not a factor in this litigation.

In November 2002, the agreement between Neptune Towers and Aluise that provided for a 2% commission was changed by a new written agreement that provided for payment of $40,000 if and when the sale to CDTwas completed “as full compensation for your assistance in locating a buyer.”