van Gestel, Allan, J.
This matter is before the Court on the Motion for Summary Judgment by Defendants Mark Peters, Frances Allou Gershwin, Bruce W. Edmands, Laurence M. Johnson, James B. Cox and William S. Hawkes, Paper #85.
BACKGROUND
The following facts are taken from the summary judgment record. In July 2000, Morris Goldings (“Gol-dings"), then a partner at the law firm known as Mahoney, Hawkes & Goldings, LLP (“MHG”), approached Paul A.T. Hoiriis (“Hoiriis”), asking for a loan of $5,000,000 to finance a stock purchase. Hoiriis *182 declined, but passed along Goldings’s proposal to Andrew Lam (“Lam”) and S.M. Kan (“Kan”). Lam and Kan, who controlled an investment company by the name of Go-Best, Ltd. (“Go-Best”), agreed to make the loan.
Soon thereafter, Goldings drafted loan documents on MHG stationery and sent them to Go-Best. Go-Best wired $5,000,000 to a Citizens Bank account Goldings personally maintained, named the Morris M. Goldings Client Account (“the Goldings account”). While this account was not an MHG account, at least some of the partners at MHG knew of its existence, though none of them monitored or supervised it. Goldings later sent apparently fraudulent documents to Go-Best purporting to reflect the transfer of its $5,000,000 into an escrow account with PaineWebber Incorporated (“PaineWebber”).
In August 2000, Goldings brought another business proposal to Hoiriis, who deferred and again passed along the offer to Lam and Kan. This proposal asked for $560,000 to finance the purchase of an original cast of A. Rodin’s The Thinker. Goldings again prepared loan documents on MHG stationery. Go-Best agreed to provide the funds and sent them to Goldings.
In December 2000, Go-Best learned that its transactions with Goldings were a sham and that it had been defrauded. At or about the same time, MHG removed Goldings as a partner in the firm.[2] Go-Best originally filed suit in this Court against a number of defendants, including claims against William S. Hawkes, Frances A. Gershwin, Bruce W. Edmands, Laurence M. Johnson, and James B. Cox, the remaining partners in MHG (collectively, “the Partners”), the firm then known as Mahoney Hawkes, LLP (“the firm”) for negligence and vicarious liability.
The firm filed for bankruptcy in April 2001, at which point this Court issued a stay of proceedings. A claim by Go-Best in the bankruptcy case was tried during the week of May 16, 2005. On September 29, 2005, the Bankruptcy Court found that: (1) the firm never agreed to represent Go-Best; (2) no attorney-client relationship existed between the firm and Go-Best; (3) no duly ran from the firm to Go-Best; (4) the firm did not benefit from Goldings’s dealings with Go-Best; and (5) the Partners never learned of Goldings’s fraudulent dealings with Go-Best until after the transactions were completed and his other misconduct came to light. See In re Mahoney Hawkes, LLP, 334 B.R. 41, 53-54 (2005).
In December 2006, Go-Best filed its First Amended Complaint in this Court, alleging claims for aiding and abetting, breach of fiduciary duty, fraud, and conversion against, among others, the Partners. The Partners filed their Motion for Summary Judgment in July 2007.
DISCUSSION
Rule 56(c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We view the evidence in the light most favorable to the nonmov-ing party. See BayBank v. Bornhofft, 427 Mass. 571, 573 (1998).
Vittands v. Sudduth, 49 Mass.App.Ct. 401, 405-06 (2000).
Thus, summary judgment is granted where, viewing the evidence in the light most favorable to the Partners, the non-moving parties, there are no issues of genuine material fact, and Go-Best, the moving party, is entitled to judgment as a matter of law. Cabot Corporation v. AVX Corporation, 448 Mass. 629, 636-37 (2007); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Go-Best, as “[t]he moving party must establish that there are no genuine issues of material fact, and that [the Partners have] no reasonable expectation of proving an essential element of [their] case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
While we examine the record in its light most favorable to the nonmoving party, Foster v. Group Health, Inc., 444 Mass. 668, 672 (2005), “(cjonclus-oxy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment” (citations omitted). Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987). “If the opposing party fails properly to present specific facts establishing a genuine, triable issue, summary judgment should be granted.” Id.
O’Rourke v. Hunter, 446 Mass. 814, 821-22 (2006).
A. Based on Massachusetts’ Liberal Policy Governing Amendments, Go-Best’s Claims Relate Back to Its Original Complaint
The Court begins with the issue of whether Go-Best’s aiding and abetting claims, not introduced until the 2006 amendment to the complaint, can survive a statute of limitations attack. Because aiding and abetting is not commonly viewed as an independent tort, the statute of limitations for aiding and abetting is the same as that of the underlying offense. See Phillips v. United States, 1996 U.S. Dist. Lexis 5729, *4 (D.Mass. 1996). Causes of action for breach of fiduciary duty, fraud, and conversion are subject to the three-year statute of limitations for torts in Massachusetts. G.L.c. *183 260, §2A. Go-Best introduced its aiding and abetting claims for the first time in its First Amended Complaint filed with this Court in 2006, well outside the scope of the three-year statute of limitations. Because the aiding and abetting claims relate back to Go-Best’s original complaint, however, they are not barred by the statute of limitations.
Claims asserted in amended pleadings that arise from “the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading” relate back to the original pleading. Mass.R.Civ.P. 15(c); Weber v. Community Teamwork, Inc., 434 Mass. 761, 785 (2001). Here, Go-Best’s aiding and abetting claims arise from the same conduct as its original claims for negligence and vicarious liability. Go-Best originally argued that the Partners’ failure to monitor Goldings’s Citizens Bank account and their decision not to report his improper withdrawal from the firm’s IOLTA account was negligent. Now, Go-Best claims that that same conduct substantially assisted Goldings’s efforts to defraud Go-Best.
The Partners’ argument that the original negligence claims did not put them on notice regarding Go-Best’s present aiding and abetting claims has some force. While the original complaint is not available, negligence and vicarious liability claims do not ordinarily suggest that a defendant might also need to defend against intentional tort claims. Additionally, Go-Best learned of the conduct on which its aiding and abetting claims are based in 2000. “While the rules of‘relation-back’ are liberal where a party seeks to amend a complaint after a statute of limitations has expired, the rules ‘are not so broad as to encompass any claim that was known to the complainant that could have been brought in a timely fashion.’ ” Weber, 434 Mass. at 785-86, quoting Wynn & Wynn,. P.C. v. Mass. Comm. Against Discrimination, 431 Mass. 655, 673 (2000).[3]
Nevertheless, “the theoretical underpinning of the relation-back doctrine” is that “once an action has been timely brought, courts ought to regard indulgently any amendment whose denial would deprive the plaintiff of a claim.” James W. Smith & Hiller B. Zobel, Rules Practice §15.09, at 276 (2006), citing Proctor v. North Shore Comm. Arts Foundation, 47 Mass.App.Ct. 372, 378 (1999); Aker v. Pearson, 7 Mass.App.Ct. 552, 553-55 (1979). Because the amendment introducing Go-Best’s claims for aiding and abetting falls outside the statute of limitations, Massachusetts’ notably liberal policy governing amendment counsels in favor of concluding that Go-Best’s aiding and abetting claims relate back to its original complaint.
Moreover, allowing Go-Best to proceed with its claims would not contravene “the major policy behind a statute of limitations — the collection and preservation of evidence.” Weber, 434 Mass. at 785 (internal quotations omitted). Given the sheer volume of affidavits, documents, and other evidence the Partners have produced even at the summary judgment stage in defending Go-Best’s claims, it seems that the evidence needed to defend against the aiding and abetting claims has been preserved since Go-Best’s claims first accrued.
B. Go-Best Does Not Have Standing to Pursue Its Claims Because the Partners’ Actions Did Not Cause Its Injuries
Next, the Court must address whether Go-Best has standing to pursue the claims it now makes against the Partners.
The issue of standing is one of subject matter jurisdiction, and as such can be raised sua sponte. See Sullivan v. Chief Justice, 448 Mass. 15, 21 (2006). “To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury.” Slama v. Attorney Gen., 384 Mass. 620, 624 (1981), citing Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974). Here, Go-Best complains of two actions by the Partners: (1) their failure to monitor the Goldings Citizens Bank account; and (2) their failure to report Goldings’s unethical behavior to the Board of Bar Overseers (“BBO”). Neither of these actions is sufficient to create standing because “the complained of injury must be a direct consequence of the complained of action.” Ginther v. Commissioner of Ins., 427 Mass. 319, 323 (1998); see also Barbara F. v. Bristol Div. of Juv. Ct. Dept., 432 Mass. 1024, 1025 (2000).
With respect to the Partners’ failure to monitor the Goldings account, the causal linkage between the Partners’ failure to monitor the account and Goldings’s efforts to defraud Go-Best is simply too attenuated. “Causation requires a showing that the plaintiffs injury can be fairly traced to the defendant’s action.” Johnson v. Martha’s Vineyard Comm’n, 1996 WL 1185088 at *2 (Mass.Super., 1996) [5 Mass. L. Rptr. 320); see also American Cancer Soc. v. Commissioner of Adm., 437 Mass. 172, 177 (2002). Go-Best’s injury resulted from Goldings’s independent conduct, which was unrelated to the Partners’ actions. Cf. Munoz-Mendosa v. Pierce, 711 F.2d 421, 426 (1st Cir. 1983) (insufficient causal linkage between development grant by housing authority and injury to plaintiffs in the form of rent increase because the rent increase was the result of independent acts by third-party landlords). Moreover, the Partners owed Go-Best no duty to monitor the Goldings client account. Mahoney Hawkes, 334 B.R. at 54; see also part D, infra. Accordingly, Go-Best lacks standing to bring a claim against the Partners based on their failure to monitor the Goldings Citizens Bank account.
The Partners’ failure to report Goldings’s unauthorized withdrawal from the firm’s IOLTA account to the BBO is likewise unrelated to Go-Best’s injury. The money taken from the IOLTA account was not Go-Best’s. There is no record evidence that Goldings’s withdrawal from the IOLTA account had anything to *184 do with his plan to defraud Go-Best. Go-Best’s sole argument connecting the Partners’ decision not to report Goldings to its injury is that if the Partners had reported the withdrawal to the BBO, Goldings might have been investigated or sanctioned in time and in a way that would thwart his scheme. This assertion is wild speculation, and will not suffice to connect the Partners’ conduct to Go-Best’s injury.[4] See generally Clancy v. McCabe, 441 Mass. 311, 312 n.3 (2004) (“(S)tatements made by the parties regarding what a . . . board may have done . . . are purely speculative . . .”); Ginther, 427 Mass. at 323 (“(I)njuries that are speculative, remote, and indirect are insufficient to confer standing”). Therefore, Go-Best does not have standing to bring a claim based on the Partners’ failure to report Goldings to the BBO.
C. Aiding and Abetting
Next the Court considers the essence of Go-Best’s current claims, aiding and abetting.
Liability as an aider and abettor requires the following: “(1) primary actor committed a wrongful act that causes injury; (2) aider and abettor was aware of his role in the overall wrongful activity when he provided assistance; and (3) aider and abettor knowingly and substantially assisted primary actor’s wrongful act.” In re McMullen, 386 F.3d 320, 332 (1st Cir. 2004). While the record amply demonstrates that Goldings committed a wrongful act that caused injury to Go-Best, that is the only element of aiding and abetting that Go-Best is able to satisfy.
1. Knowledge of Wrongful Activity
Go-Best contends that because the Partners knew that Goldings had made an unauthorized withdrawal from the firm IOLTA account, and therefore they knew that Goldings had breached his fiduciary duty to his clients. According to Go-Best, the Partners aided and abetted Goldings in a breach of fiduciary duty to Go-Best some months later by not reporting his earlier breach of duty to others. At best, Go-Best’s assertions might establish that the Partners knew of Goldings’s breach of fiduciary duty to his clients; not to Go-Best. It would be impossible for the Partners to have learned of Goldings’s efforts to defraud Go-Best through discovery of his misappropriation of the MHG clients’ funds; Goldings did not even propose the fraudulent transactions to Go-Best until six months after Goldings’s unauthorized withdrawal from the firm IOLTA account and the replacement of those funds when the issue was uncovered.
Go-Best argues that it need only show that the Partners had knowledge of any wrongful conduct by Goldings to make them aiders and abettors of his breach of fiduciary duty to Go-Best. Liability for aiding and abetting is more narrowly delineated, requiring Go-Best to show “that the [the Partners] knew of the breach and actively participated in it.” Spinner v. Nutt, 417 Mass. 549, 556 (1994) (emphasis added). The Spinner court’s choice of diction in using “the breach” versus “a breach” suggests that the aider and abettor must know of the particular breach which injured the plaintiff, not just any unrelated breach by the primary actor. No evidence in the summary judgment record indicates that the Partners had any knowledge whatsoever of Goldings’s scheme, and the Bankruptcy Court explicitly found that the Partners “did not know about Go-Best or the [fraudulent] transactions.” Mahoney Hawkes, 334 B.R. at 54. Consequently, there is no basis to conclude that the Partners had knowledge of Goldings’s wrongful activity as it concerned Go-Best.
2. Knowing and Substantial Assistance[5]
Go-Best contends that the Partners’ failure to monitor or report Goldings’s unethical activities constituted knowing assistance to Goldings and his fraudulent scheme. Go-Best’s allegations that the Partners, through their inaction, aided and abetted Goldings is insufficient because “(t]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.” Schwan’s Sales Enterprises, Inc. v. Commerce Bank & Trust Co., 397 F.Sup.2d 189, 199 (D.Mass. 2005) (internal quotations omitted). The Bankruptcy Court has found that the Partners owed no such duty to Go-Best. Mahoney Hawkes, 334 B.R. at 54. Go-Best, a party to the bankruptcy proceedings in which those findings were made, is bound by them.
In addition, in deciding whether the Partners rendered substantial assistance, “the nature of the act encouraged, the amount of assistance given by [them and their] presence or absence at the time of the tort ... and [their] state of mind are all considered.” Payton v. Abbott Labs, 512 F.Sup. 1031, 1035 (D.Mass. 1981), quoting Restatement (Second) of Torts §876, Comment on Clause (b). Here, the only assistance alleged was the Partners’ inaction upon discovering unrelated unethical conduct by Goldings. More significantly, the Partners were not present at the time of Goldings’s tort, and indeed had no knowledge of it until after Goldings’s other misconduct came to light.
Moreover, silence is not construed as substantial assistance unless “the alleged aider-and-abettor ben-efitted from such silence.” Austin v. Bradley, Barry & Tarlow, P.C., 836 F.Sup. 36, 40 (D.Mass. 1993). The Bankruptcy Court has already found that the firm did not benefit from Goldings’s scheme to defraud Go-Best. Mahoney Hawkes, 334 B.R. at 54. In addition, a plaintiff “must demonstrate at least some measure of ‘active participation’ and the knowing provision of substantial assistance” to sustain a claim for aiding and abetting fraud. Schultz v. Rhode Island Hosp. Nat’l Trust Bank, 94 F.3d 721, 730 (1st Cir. 1996); see also Stock v. Fife, 13 Mass.App.Ct. 75, 82 n.10 (1982) (the doctrine of aiding and abetting “appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and take affirmative steps to encourage the *185 achievement of the result”). Accordingly, the record does not indicate that the Partners provided substantial assistance to Goldings.
D. Duties and Liabilities Owed to Go-Best[6]
The Bankruptcy Court found that there was no attorney-client relationship between the firm and Go-Best. Mahoney Hawkes, 334 B.R. at 54. To the extent that Go-Best contends it was a client of the firm, its arguments are foreclosed by collateral estoppel. Because Go-Best was not a client of the firm, the Partners owed no duty to Go-Best to monitor the Goldings Citizens Bank account or to report Goldings’s withdrawal from the firm IOLTA account because “[t]he general rule is that an attorney owes a duty of care only to clients.” Williams v. Ely, 423 Mass. 467, 475 (1996), citing Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 522, cert. denied, 493 Mass. 894 (1989).
Accordingly, the firm cannot be held liable to Go-Best because “(w]here there is no attorney/client relationship there is no breach or dereliction of duty and therefore no liability.” Devaux v. American Home Assurance Co., 387 Mass. 814, 817 (1983), quoting McGlone v. Lacey, 288 F.Sup. 662, 665-66 (D.S.D. 1968). See, e.g., Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991) (dismissing claim for aiding and abetting because no attorney-client relationship existed between the primary actor and the plaintiff).
ORDER
While Go-Best’s claims in its First Amended Complaint relate back to its original complaint under Massachusetts’ liberal policy governing amendment, Go-Best lacks standing to pursue claims against the Partners for actions unrelated to its injuries. Also, the Partners are entitled to summary judgment on the merits because Go-Best has failed to show they had knowledge of Goldings’s scheme or gave him substantial assistance. Moreover, the Partners owed Go-Best no duly to monitor the Goldings Citizens Bank account or report Goldings’s misconduct, because Go-Best was not a client. For these various reasons, the Motion for Summary Judgment by Defendants Mark Peters, Frances Allou Gershwin, Bruce W. Edmands, Laurence M. Johnson, James B. Cox and William S. Hawkes, Paper #85, is ALLOWED.

In addition to Goldings’s fraud against Go-Best, he was also removed from MHG for stealing funds from other clients, and because he had made unauthorized withdrawal of $200,000 from MHG’s IOLTA account in January 2000, which he transferred to the Goldings account.

Go-Best has suggested an explanation for its delay in amendment, claiming that it was barred from amending its complaint while this Court’s stay of proceedings was in place.

Perhaps most telling is Go-Best’s proposition to depose members of the Board of Bar Overseers to determine what corrective actions they might have taken if the partners had reported Goldings’s unrelated misconduct.

The Partners cite SEC v. Tambone, 417 F.Sup.2d 127 (D.Mass. 2006), in their Memorandum of Law in Support of their Motion for Summary Judgment. However, Tambone deals with aiding and abetting violations of the Investment Advisors Act of 1940, not aiding and abetting common-law torts in Massachusetts. As such, Tambone is inapposite.

The cases cited in this section all pertain to liability for legal malpractice; no cases touch directly on the issue of duties to non-clients under S.J.C. Rule 3:07, Rule 8.3(a).